# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN TRANSPORT GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 05650 |
| | ) | |
| CALIFORNIA CARTAGE CO., LLC, and | ) | Judge John J. Tharp, Jr. |
| PACORINI METALS USA, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

American Transport Group (ATG), a property broker, sued two warehousing and logistics providers, defendants California Cartage Company (CCC) and Pacorini Metals, for the loss of two shipments of copper cathodes. ATG claims that the defendants negligently handled the loads, causing them to be lost or stolen rather than released to the appropriate carrier and delivered to the intended recipient. The defendants now move for summary judgment. Among their arguments is the contention that ATG's claim rests on facts that contradict its representations in a prior lawsuit pertaining to the same shipments, in which ATG obtained a default judgment against ACH Express, Inc.—the designated carrier of the goods and a stranger to these proceedings. For the reasons that follow, the defendants' motions are granted.

## FACTS

Given the nature of the issues presented, the underlying facts may be stated briefly. ATG brokered the transportation of the two loads of copper cathodes owned by its customer, Trafigura AG, which were valued at $282,333.87.[1] ATG arranged for the pickup of the loads by its

---

[1] Trafigura is a trader of metals (buying, selling, storing, and shipping) and frequently does business with Pacorini through the London Metals Exchange.

designated carrier, ACH, at CCC's warehouse in Alsip, Illinois, where they were being stored by Pacorini. The shipment of the two loads, which were part of a six-load package, was scheduled for October 19, 2012. The loads were picked up—by someone—but were never delivered to the intended final recipient. ATG reimbursed its customer, Trafigura, for its loss, and Trafigura in turn assigned its legal claims to ATG, which sued CCC and Pacorini (together, the "defendants").

In its August 8, 2013, complaint in this case, ATG never refers to its designated carrier, ACH, by name. It alleges simply that because of the defendants' negligence as warehousing providers, the unnamed carrier never received the loads. Specifically ATG alleges that Pacorini and CCC released the two truckloads of copper cathodes to someone other than ATG's designated shipper. Compl. ¶¶ 19, 23, 24, 40, ECF No. 1.

ATG's complaint does not mention that just two weeks earlier, on July 25, 2013, ATG also had sued ACH in this Court under the Carmack Amendment, the federal law providing a remedy against interstate carriers for goods lost or damaged in transit. *See* ACH Compl., Case No. 13 C 5317, ECF No. 1. That complaint (the "ACH complaint") does not mention CCC or Pacorini in any capacity. And ATG, quite possibly the only party aware of the pendency of two lawsuits related to the exact same lost shipment, did not apprise the Court, or as far as the Court knows, the defendants, of the related nature of the cases. *See generally* Fed. R. Civ. P. 20(a)(2) (permissive joinder of defendants); L.R. 40.4 (cases related if they "involve the same property," or "involve the same issues of law or fact," or "grow out of the same transaction or occurrence.").

In the ACH complaint, ATG alleged that on October 19, 2012, it tendered the two truckloads to ACH, which "acknowledged receipt of the shipment in good order and condition

on the bills of lading it issued therefor" but failed to deliver the goods. ACH Compl. ¶¶ 7-10, Case No. 13 C 5317, ECF No.1. ATG claimed that ACH was liable for ATG's "full actual loss" of $282,333.87. When ACH failed to respond to the complaint, ATG moved for a default judgment and submitted as support the affidavit of Thomas Soehlke, its Operations Manager. In the affidavit, dated November 1, 2013, Soehlke attests that the shipments were tendered to ACH and that ACH acknowledged receipt but failed to deliver the shipments, causing ATG to be damaged in the amount of $282,333.87. Soelke Affidavit A, CCC Ex. 6, ECF No. 62-6. Unaware that three months earlier, ATG had filed a separate complaint (in this case) alleging that CCC and Pacorini had failed to deliver the very same loads to ACH, this Court entered default judgment for ATG against ACH on November 12, 2013.

In this case, CCC and Pacorini moved to dismiss the claims against them on a variety of theories. ATG responded to the motions on November 12, 2013—the same day the default judgment was entered in the ACH case. Having already obtained complete relief, ATG nevertheless continued to prosecute this case against CCC and Pacorini for the same loss. This Court (not recognizing that this lawsuit pertained to the same two lost loads) therefore ruled on the defendants' motions, denying them both on the merits of the arguments that had been raised. The defendants subsequently answered the complaint, and at that point, each raised for the first time defense of "collateral estoppel"[2] based upon the default judgment against ACH. CCC

---

[2] Collateral estoppel, or issue preclusion, is not the appropriate doctrine to apply in trying to bar this suit based on the prior judgment against ACH. Under Illinois law, a judgment by default cannot support the defense of collateral estoppel in a subsequent suit, because collateral estoppel requires that the relevant issue have been "actually litigated" in the prior suit. *In re Jacobs*, 448 B.R. 453, 470 (Bankr. N.D. Ill. 2011) ("Illinois subscribes to the majority view that a default judgment cannot form the basis for collateral estoppel"); *S & S Auto. v. Checker Taxi Co.*, 166 Ill. App. 3d 6, 10, 520 N.E.2d 929, 932 (1988).

Answer, ECF No. 44; Pacorini Answer, ECF No. 46. However, neither defendant moved for judgment on the pleadings, instead proceeding to discovery.

The defendants now move for summary judgment, primarily arguing that the doctrine of judicial estoppel should be applied to preclude any claim by ATG inconsistent with its prior representations about what happened to the shipments.[3] In response to the motion, ATG concedes that its representations in this case contradict those made in the ACH case. It submits another affidavit from Thomas Soelke. Soelke Affidavit B, Pl. Ex 1, ECF. No. 73. Soelke now attests that the allegations in the complaint in *this* case "are true and correct to the best of his knowledge, information, and belief." *Id*. ¶ 3. He further states that the information contained in paragraphs 11 and 12 of his prior affidavit—those in which he attested that ACH had received the shipments and provided bills of lading before losing them—"was derived solely from representations made by CCC personnel to me and ATG personnel that report to me," and that "absent the misrepresentation by CCC, ATG would have pursued CCC and not ACH for the loss of the 2 subject shipments." *Id*. ¶ 10. Soelke further attests that CCC never produced, as promised, bills of lading[4] for the shipments, "which is why we realized that we had made a mistake about where and why the subject shipments went missing." *Id*. ¶ 11. Soelke finally attests that ATG has been unable to collect the judgment from ACH or its insurer and that the default judgment is "worthless to ATG." *Id*. ¶¶16-17. Despite admitting the fundamental

---

[3] Pacorini also asserted an argument that its contract with Trafigura effectively precludes the assignment of Trafigura's claim to ATG, but in view of the disposition of this case on the ground of judicial estoppel, the Court has not addressed that argument.

[4] CCC disputes that ATG never received bills of lading and further notes that the Carmack Amendment requires *the carrier* (here, ACH) to issue bills of lading. CCC Response, ¶¶ 4,7, ECF No. 75. CCC has produced documentation for the shipments, but according to Soelke, the documents do not look like any other bills of lading he has ever seen and therefore are not genuine. Soelke Affidavit B ¶ 19, Pl. Ex. 1, ECF 73.

4

"mistake" underlying the ACH case, ATG and Soelke never moved to withdraw the affidavit nor to vacate the default judgment against ACH.

## DISCUSSION

The defendants contend that ATG is precluded from attempting to demonstrate in this case that either of them is responsible for the loss of the copper cathode shipments because ATG previously represented that the goods had been delivered to ACH, the carrier, and were subsequently lost or stolen. In assessing this defense, the court applies the federal law of judicial estoppel although its jurisdiction is based upon diversity of citizenship. Unlike *res judicata* or other preclusion doctrines, as to which the court is bound to apply state law governing judgments, judicial estoppel relates to the federal courts' ability to protect themselves from manipulation and should not vary according to the law of the state in which the dispute arose. *See Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013); *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999). The purpose is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Simply stated, under the doctrine of judicial estoppel, "a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a later proceeding." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 495 (7th Cir. 2011); *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (explaining, "the doctrine aims to prevent a party that prevails in one lawsuit on one ground from repudiating that same ground in another lawsuit"). "The principle is that if you prevail in Suit # 1 by representing that *A* is true, you are stuck with *A* in all later litigation growing out of the same events." *Eagle Found., Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987).

Although there is no rigid formula, there are "at least three pertinent factors" to examine when applying the federal doctrine of judicial estoppel: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *In re Airadigm Commc'ns, Inc.*, 616 F.3d at 661 (quotation marks and internal citations omitted). "Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

As to the first factor, ATG's position in this case is clearly contrary to the one it took in its suit against ACH—a fact it admits.[5] In the ACH case, ATG alleged that ACH received the goods and then failed to deliver them to the intended recipient. ATG's representative, Mr. Soelke, then attested under oath to this critical fact. In this case, however, ATG maintains that CCC and Pacorini negligently transferred the loads to someone ***other than*** ACH. The "clearly contradictory" requirement is met.

---

[5] That is not to say that it was improper to simultaneously allege inconsistent claims against the defendants here and in the ACH case. "[T]here's no rule against inconsistent pleadings in different suits, or for that matter a single suit." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012); *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) (inconsistent pleading permitted because "the pleader is limited to a single recovery no matter how many different (and conflicting) theories it offers"); *see* Fed. R. Civ. P. 8(d)(3). In *Peterson*, the Seventh Circuit blessed the pleading of two versions of the facts against different defendants. *See id.* (where "the Trustee [is] alleging that Bell both did, and did not, know of Peters's fraud in 2006 and 2007, the pleading is sufficient if *either* allegation is sufficient). Whether there was a sufficient factual basis for the allegations in one or both complaints, and whether the plaintiff was required to plead upon information and belief as to the material allegations is matter for Rule 11 rather than the rules of pleading. *See* Fed. R. Civ. P. 11(b)(3).

Second, ATG prevailed in the first case. Rather than wait to see what discovery would reveal in this case, it affirmatively pursued a default judgment against ACH, submitting Soehlke's sworn affidavit as support for that motion. Indeed, it filed its complaint alleging that CCC and Pacorini failed to deliver the shipments to ACH only two weeks after filing its complaint alleging that the shipments had been picked up by ACH but proceeded to obtain a judgment against ACH that it was entitled, and sought, to enforce. Whether ACH can pay that judgment, or whether its insurer will, is beside the point. It is true that ACH did not have to "persuade" the Court of the soundness of its position because of ACH's default, but ATG nevertheless prevailed based on the allegations of its complaint and the first Soelke affidavit. The only possible basis for relief against ACH under the Carmack Amendment was that ACH, the ground carrier, was liable for the loss of the shipments. 49 U.S.C. § 14706; *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 928 (7th Cir. 2003) (The Carmack Amendment "allows a shipper to recover from a carrier for actual loss caused by the carrier"). No judgment by default could have been obtained without ATG's representation that ACH had taken possession of the goods. *See generally Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (explaining that the Seventh Circuit follows the rule that the well-pleaded allegations of the complaint relating to liability are taken as true). That position is the very foundation of the judgment, by default or otherwise, and therefore the second factor for the application of judicial estoppel is satisfied.

Finally, despite ATG's arguments to the contrary, there is no question that ATG would derive an unfair advantage if not estopped from asserting its claims against the defendants in this case. Although ***pleading*** in the alternative is permitted (*see infra* note 5; Fed. R. Civ. P. 8(d)(3)), obtaining judgments against multiple defendants for the very same loss without proving any kind

of joint or derivative liability is plainly inconsistent with the law. It is a double recovery. "Why should one be entitled to win the first suit by demonstrating A and the second suit by establishing *not*-A? One of these must be wrong; indeed, inconsistency probably demonstrates a violation of Fed. R. Civ. P. 11." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990).

ATG says it should be able to change its position now because CCC deceived it by falsely asserting that it had delivered the shipments to ACH. That argument fails several times over. To begin, ATG has not proved any deceit by CCC. CCC disputes ATG's assertions regarding the bills of lading, and ATG has nothing but Soehlke's opinion of the appearance of the documentation CCC provided to support its contention that bills of lading were never issued. That does not answer CCC's argument that it was the duty of the carrier, not CCC, to provide them. Moreover, Soelke's misrepresentations to the Court in the ACH lawsuit are not CCC's doing. He represented then that he had personal knowledge that ACH had received the loads and issued bills of lading. He now concedes that this statement was false at the time. He knew at the time that he was relying on CCC's word, not his own knowledge, in attesting that ACH got the shipments. Therefore his misrepresentation in that respect was not induced by CCC.

More significantly, CCC's alleged deception does not explain, much less justify, ATG's attempt to obtain inconsistent judgments against multiple defendants. That is because ATG acknowledges that its discovery of the alleged deception by CCC **"led to the filing of the instant law suit."** Pl. Mem. 3, ECF No. 70 (emphasis added). "The instant law suit" was filed only two weeks after the law suit against ACH, so it is plain that ATG continued to seek its judgment against ACH for months after it learned of the purportedly false information from CCC. Soehlke's first affidavit, swearing that the shipments were picked up by ACH, was dated

8

November 1, 2013, almost three months after ATG had filed its complaint against CCC and Pacorini alleging that they were not. Soelke's second affidavit swears that it was CCC's inability to produce bills of lading that convinced him that ACH had never picked up the shipments, and that "[h]ad ATG known when it sued ACH what it now knows" about CCC's records, it "would have sued CCC and not ACH." Soelke Affidavit B ¶¶ 15, 20, Pl. Ex 1, ECF. No. 73. But, as ATG's brief concedes in the language quoted above, ATG discovered the problems with CCC's records less than two weeks after it sued ACH, proceeded to sue CCC and Pacorini on that basis, and continued to pursue a judgment against ACH on a factual premise that it knew to be false.

It is clear, then, that even if CCC deceived ATG about tender of the shipments to ACH, ATG has not provided a reasonable justification for the "change" in its litigating position. *See In re Airadigm Commc'ns, Inc.*, 616 F.3d at 663. For all its talk of being a "victim of deceit," Pl. Mem. 7, ECF No. 70, ATG was aware within two weeks of the information on which it bases its claim of deception, but the only action that information prompted it to take was to file a separate lawsuit against CCC and Pacorini that made no mention whatsoever of the ACH complaint or the possibility of liability on the part of ACH. Having concluded that CCC deceived it about tender of the shipments to ACH (ATG's current position), ATG could not in good faith have continued to pursue a judgment against ACH. If CCC tricked ATG into suing the wrong party, as ATG maintains, that fact does not explain or justify ATG's successful efforts to obtain a judgment against the wrong party when it knew that such a judgment had no basis in fact.

It bears noting here that ATG does not attempt to justify its conduct by claiming that it was uncertain about what had happened to the shipments after assessing CCC's documentation, such that it needed to plead in the alternative. Soelke's current affidavit, and ATG's response brief, state unequivocally that they "made a mistake about where and why the subject shipments

went missing," and that the shipments "were never delivered to the consignee . . . ." Soelke Affidavit B ¶¶ 11-12, Pl. Ex 1, ECF. No.73; Pl. Mem. 3, ECF No.70. (it was CCC's documentation that "led ATG to conclude that it had been misled by CCC"). But even if CCC's documentation had only given it cause to doubt whether ACH ever took possession of the shipments, that incertitude would not justify ATG's efforts to secure inconsistent judgments against multiple parties. If unsure of the truth, ATG could have sought to consolidate the two cases, or to join CCC and Pacorini in its original case, pleading in the alternative separate theories under which ACH, CCC, and Pacorini might be liable for the loss of the shipments. Or it could have continued to pursue the claims separately, and simply abandoned one of them once it had obtained a judgment in the other. But ATG did none of these things. Instead, it opted to pursue multiple judgments against ACH and CCC/Pacorini for the same loss by asserting unequivocally inconsistent positions. Pursuing multiple judgments for the same loss based on inconsistent positions is not a "change" in litigating position; it is a fraud upon the courts and is precisely the sort of impermissible tactic that judicial estoppel exists to thwart.

That ATG now belatedly offers to agree to have the default against ACH vacated, *see* Pl. Mem. 9, ECF No. 70, does not help its case. That offer comes only after ATG's extensive but unsuccessful attempts to obtain payment from ACH or its insurer. Nothing stopped ATG from moving to vacate the default upon learning that its representations to the Court in that case were false. Instead, it continued to pursue relief against CCC and Pacorini while doing nothing to prevent the prospect of a double recovery. Now that ATG seems certain that it cannot collect its "worthless" judgment, it is willing to have the default vacated[6]—not because the judgment was

---

[6] The Court notes, however, the ATG never has, in fact, moved to vacate the default judgment in Case Number 13 C 5317 and voluntarily dismiss the case against ACH—even now,

obtained in error (if ATG's current version of the facts is to be believed)—but because the defendants in this case have raised the prior judgment as a valid defense. Getting multiple bites at the same apple is an unfair advantage that application of judicial estoppel would prevent.

ATG is also off-base in suggesting that judicial estoppel should not apply because these defendants were not parties to the prior case and the judgment "had no affect [sic] or impact upon" them. Judicial estoppel is about protecting the courts from manipulation, not protecting the interests of particular parties. Identity of the parties is not required. Judicial estoppel "may be raised by any party, regardless of whether the party was prejudiced by the inconsistency, or by the court on its own motion." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). ATG can rest assured that this Court would have raised the issue *sua sponte* had the defendants not done so.

ATG is right about one thing: Judicial estoppel is an equitable doctrine designed to prevent unfairness and inequitable conduct. And that is what it does here in barring ATG's attempt to secure a second judgment, relating to the same loss, based on irreconcilable positions. That ATG might be out $283,000 is a direct result of its deliberate litigation strategy—simultaneously pursuing factually inconsistent claims in two lawsuits and failing to act upon learning the "real" version of events—and not any action by the Court or the defendants. ATG's effort to have it both ways, by obtaining one judgment based on ACH's failure to deliver shipments and then pursuing another judgment for the same loss under a theory that ACH never received the shipments, is the reason that judicial estoppel is even available as a defense in this case. Application of the doctrine is completely appropriate here, and the Court has no sympathy for ATG's cries of unfairness.

---

when the defendants' summary-judgment motions have placed it on clear notice that the judgment in that case jeopardizes its relief in this case.

11

* * *

Accordingly, the defendants' respective motions for summary judgment are granted on the basis of judicial estoppel. Judgment in Case No. 13 C 5650 is entered for the defendants and the case is terminated.

Furthermore, the Court orders ATG to show cause why the default judgment in the ACH case, No. 13 C 5317, should not be vacated on the Court's own motion pursuant to Fed. R. Civ. P. 60(d)(3) for fraud upon the Court, and the case dismissed, owing to ATG's implicit concession that its motion for a default judgment in that case had no factual basis. ATG's response to the order to show cause is due within 21 days of this order and shall be filed on the docket in Case No. 13 C 5317.

Finally, ATG's counsel[7] are ordered to show cause why they should not be sanctioned for the submission of an affidavit in support of the default judgment against ACH that (i) was not based upon the affiant's personal knowledge and (ii) was otherwise without evidentiary basis. Counsels' response to the show-cause order is due within 21 days of this order and shall be filed on the docket in Case No. 13 C 5317.

This Memorandum Opinion and Order is to be filed in both cases, No. 13 C 5317 and No. 13 C 5650.

Date: March 9, 2016

John J. Tharp, Jr.
United States District Judge

---

[7] The Court will not impose additional sanctions on ATG itself, which already will bear a financial consequence if both of its lawsuits are dismissed.